United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

DARRYL LEE GOLDSTEIN,

          Plaintiff,

  v.

COUNTY OF SAN MATEO, et al.,

          Defendants.

_____/

No. C 05-03209 SBA (PR)

**<u>ORDER OF DISMISSAL WITH LEAVE TO AMEND</u>**

(Docket no. 30, 33)

**<u>BACKGROUND</u>**

      Plaintiff Darryl Lee Goldstein filed the instant <u>pro se</u> civil rights complaint under 42 U.S.C. § 1983. He has been granted leave to proceed <u>in forma pauperis</u>.

      A federal court must conduct a preliminary screening in any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). In its review, the Court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted or seek monetary relief from a defendant who is immune from such relief. <u>Id.</u> § 1915A(b)(1), (2). Accordingly, the Court will screen the complaint to determine whether Defendants are required to respond.

      Venue is proper in this district as the acts complained of occurred in San Mateo County, which is located in this district. 28 U.S.C. § 1391(b).

**<u>DISCUSSION</u>**

**I.**    **<u>Standard of Review</u>**

      To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. <u>West v. Atkins</u>, 487 U.S. 42, 48 (1988).

      Dismissal for failure to state a claim is warranted if the plaintiff is unable to articulate "enough facts to state a claim to relief that is plausible on its face." <u>Bell Atl. Corp. v. Twombly</u>, 127

S. Ct. 1955, 1973 (2007).  Pro se pleadings must be liberally construed.  Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988).

**II.    Legal Claims**

Before the Court are Plaintiff's original and amended complaints.  In an Order dated February 9, 2006, the Court determined that the amended complaint was the operative complaint in this action.  (Feb. 9, 2006 Order at 1 (citing Fed. R. Civ. P. 15(a).)  Because Plaintiff incorporated the claims in his original complaint into the operative complaint, the Court will address the claims from each pleading separately.

**A.    Original Complaint**

In his original complaint, Plaintiff names as Defendants various officials from the San Mateo County Sheriff's Department, including Sheriff Don Horsley, Assistant Sheriff Greg Trindle, and San Mateo County Librarian Peggy Bennett, as well as the San Mateo County Jail.  Plaintiff alleges that he has exhausted his administrative appeals with regard to his claims against Defendants.  He seeks monetary and punitive damages for alleged violations of his civil rights.

Plaintiff alleges that Defendants have violated his right to access to the courts because they denied him "adequate, effective, and meaningful access to the law library" at the San Mateo County Jail.  (Compl. at 7.)

In Bounds v. Smith, the Supreme Court held "that the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law."  430 U.S. 817, 828 (1977).  Subsequently, the Supreme Court clarified that Bounds did not establish a substantive right to law library access, but rather signaled that in order for prisoners' right of access to the courts to be meaningful, they must be given adequate resources to prepare.  See Lewis v. Casey, 518 U.S. 343, 350-51 (1996).  The Court explained:

> Because Bounds did not create an abstract, freestanding right to a law library or legal assistance, an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense.  That would be the precise analog of the healthy inmate claiming constitutional violation because of the inadequacy of the prison infirmary.  Insofar as the right vindicated by Bounds is concerned, "meaningful access to the courts is the

United States District Court
For the Northern District of California

2

touchstone," and the inmate therefore must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim.  He might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known.  Or that he had suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable even to file a complaint.

Id. at 351.

In the instant case, Plaintiff has not plead any actual harm caused by his alleged lack of access to the San Mateo County Jail law library.  In fact, a review of Plaintiff's prolific filings in this case, and the numerous civil actions he has filed in the past, demonstrates that he possesses a higher level of legal sophistication than most pro se plaintiffs and has had adequate resources and materials to pursue his various claims.  Due to the extensive and thorough nature of Plaintiff's past filings, it is clear that his claims have not been hindered by a lack of access to the law library.

For the foregoing reasons, the Court finds that Plaintiff is allowed sufficient access to the law library, and that he has suffered no harm from a lack thereof.  The Court finds that Plaintiff has failed to state a cognizable denial of access to the courts claim against the named Defendants in this action.  Accordingly, the claims in original complaint against the named Defendants relating to the alleged denial of access to the law library at the San Mateo County Jail are DISMISSED.

### B.   Amended Complaint

On January 4, 2006, Plaintiff filed an amended complaint.  His amended complaint is extremely lengthy and joins claims regarding separate constitutional violations Plaintiff contends he suffered during his incarceration at the San Mateo County Jail including: improper medical care, denial of his religious rights, and retaliation.

The facts included below are derived from the allegations in Plaintiff's court filings, which are taken as true and construed in the light most favorable to Plaintiff for purposes of the Court's initial review of the amended complaint.  See Parks Sch. of Bus., Inc. v. Symington, 51 F.3d 1480, 1483 (9th Cir. 1995).

### 1.   Medical Care Claims

When a pretrial detainee challenges the conditions of his confinement, the proper inquiry is whether the conditions amount to punishment in violation of the Due Process Clause of the

3

**United States District Court**
For the Northern District of California

Fourteenth Amendment. See Bell v. Wolfish, 441 U.S. 520, 535 n.16 (1979). A pretrial detainee, who has not yet been convicted of the crime for which he or she has been charged, is entitled to at least the protections afforded convicted prisoners. See id.

In the prison context, deliberate indifference to serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment. See Estelle v. Gamble, 429 U.S. 97, 104 (1976); McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds, WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc). A determination of "deliberate indifference" involves an examination of two elements: the seriousness of the prisoner's medical need and the nature of the defendant's response to that need. See McGuckin, 974 F.2d at 1059. A "serious" medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the "wanton infliction of unnecessary pain." Id. (citing Estelle, 429 U.S. at 104). A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. Farmer v. Brennan, 511 U.S. 825, 837 (1994).

Mere negligence is never sufficient to establish a constitutional violation. See County of Sacramento v. Lewis, 523 U.S. 833, 849 (1998) (holding that liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process); Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981) (holding that negligence or harassment related to medical care is insufficient to establish an Eighth Amendment violation).

### a.   Eye Care

In Goldstein v. Perryman, Case No. C 03-1556 SBA (PR), Plaintiff extensively litigated the alleged denial of proper medical treatment for his eyes.[1] Plaintiff claimed that he suffered from recurrent eye pain and jail officials at the Santa Clara County Jail failed to respond to his complaints

---

[1] Plaintiff had filed numerous documents, asserting claims against employees of Santa Clara County based on alleged mistreatment while he was confined at the Santa Clara County Jail from December, 2001 to December, 2002, in two prior actions: Goldstein v. Flament, Case No. C 00-0598 SBA (PR) and Goldstein v. Perryman, Case No. C 02-0764 SBA (PR). The Court reviewed the filings, identified a set of documents that presented all of Plaintiff's allegations of mistreatment at the Santa Clara County Jail, severed these claims from the two actions, and directed the Clerk of the Court to open a new action with the selected representative documents. The new action was opened as Goldstein v. Perryman, Case No. C 03-1556 SBA (PR).

regarding his eye care from December, 2001 to December, 2002.  In that action, the Court found that Plaintiff failed to state a cognizable claim for relief:

> Plaintiff's allegations [did] not demonstrate that the lack of medical care for his eye was so lacking that it amounted to punishment in violation of his due process rights. Indeed, his allegations [did] not even suggest that county medical personnel were even negligent, except perhaps in isolated instances of delayed appointments.

(July 3, 2003 Order in Case No. C 03-1556 SBA (PR) at 16.)

In the present action, Plaintiff claims he still suffers from "serious eye problems."  (Am. Compl. at 8.)  He claims that he informed the medical staff of "his need for follow up eye care treatment on March 14, 2005, the date he was booked into the San Mateo County Jail."  (Id.)  He claims that he was "provided eye drops and was not seen by an eye doctor until May 18, 2005, over two months later and after repeated request [sic] for eye pain medications."  (Id.)

He alleges that Defendants Medical Manager Rebecca Anderson Potts and Correctional Health Services Director Normalee Tillman violated his due process rights by delaying treatment for his eye problems and caused him to suffer "severe eye pain, loss of vision, denial of appropriate cataract treatment."  (Id. at 12.)  Plaintiff, however, does not allege that being given an earlier appointment would have resulted in treatment that would have relieved him of severe pain or would have prevented vision loss or other further significant injury.  In fact, Plaintiff was seen by Defendant Dr. Anne Benton on May 18, 2005, at which time she ordered glasses and eye drops for Plaintiff.  However, Plaintiff claims that Defendant Benton did not request his medical history and thus "failed to inquire into essential facts that were necessary for her to make a professional judgment and that failure has subjected Plaintiff to additional vision loss, extreme eye pain and cataract problems . . . ."  (Id. at 10-11.)  Plaintiff faults Defendant Benton for not ordering his medical records, but he does not explain why those records would have altered his prescribed care. Therefore, there is no reason to believe that Defendant Benton's actions were not an appropriate course of conduct.

Plaintiff claims that Defendant Benton acted pursuant to a county policy of "providing sub-standard medical care to prisoners treated at the County Hospital."  While applying such a policy might amount to unconstitutional punishment, Plaintiff has not alleged facts demonstrating that the policy was unconstitutional as applied to him.  Plaintiff apparently expressed purely subjective

**United States District Court**
For the Northern District of California

reports of eye pain, uncorroborated by independent medical evidence.  Moreover, as mentioned below, Plaintiff had only recently withdrawn from prescription drugs, which could have been independent sources of pain that would abate with time.

For the foregoing reasons, Plaintiff's allegations do not demonstrate that the lack of medical care for his eyes was so lacking that it amounted to punishment in violation of Plaintiff's due process rights.  Indeed, his allegations do not even suggest that county medical personnel were even negligent, except perhaps in delaying his eye treatment appointment.  However, negligence is not sufficient to establish a constitutional violation.  See Lewis, 523 U.S. at 849.  Therefore, Plaintiff fails to state a cognizable claim for relief, and all of his claims regarding his eye care at the San Mateo County Jail are DISMISSED.

### b.    Podiatry Care

Plaintiff alleges that as soon as he arrived at the jail, he told staff that he "suffer[ed] from severe arthritis in both feet [and] in-grown corns in his right foot which produce pain so severe that Plaintiff has sleepless nights and mobility problems."  (Am. Compl. at 15.)  He claims that he was not seen by a "foot doctor" until June 16, 2005.  He informed Defendants Potts and Tillman that "his foot problem required removal of the under the skin corns on the inside of Plaintiff's right foot on a monthly basis or surgery."  (Id.)  However, Plaintiff claims he "was still not seen by a foot doctor from June 16, 2005 to December 30, 2005."  (Id.)  As a result of the delays in treatment, Plaintiff claims he experienced "extensive foot pain" and "mobility discomfort."  (Id.)

Plaintiff's allegations fail to state a claim for relief under § 1983 because they do not amount to more than medical negligence.  See, e.g., Frost v. Agnos, 152 F.3d 1124, 1130 (9th Cir. 1998) (finding no merit in claims stemming from alleged delays in administering pain medication, treating broken nose and providing replacement crutch, because claims did not amount to more than negligence).  Accordingly, Plaintiff's claims regarding podiatry care are DISMISSED for failure to state a claim.

### c.    Back Pain

In his amended complaint, Plaintiff alleges he suffers from "severe back pain from a former injury of his T-12."  (Am. Compl. at 16.)  He claims that from his arrival on March 14, 2005 to

United States District Court
For the Northern District of California

December 30, 2005 (the date of his amended complaint), he "has been forced to sleep on a concrete slab (bottom bunk) with a thin mattress." (Id.) He claims he was "provided an additional . . . thin worn mattress," but that his request for "adequate padding" was denied. (Id. at 16-17.) He also claims that Defendants Potts and Tillman failed to provide "adequate back pain treatment" or "medication for his severe back pain." (Id.) Plaintiff does not allege that he suffered any lasting pain or any physical damage from having to sleep on the thin mattress. The Court finds that the brief discomfort alleged is insufficient to establish a constitutional violation. See, e.g., Hernandez v. Denton, 861 F.2d 1421, 1424 (9th Cir. 1988) (allegation that inmate slept without mattress for one night is insufficient to state Eighth Amendment violation and no amendment can alter that deficiency), judgment vacated on other grounds, 493 U.S. 801 (1989). Accordingly, his claims related to back pain are DISMISSED for failure to state a claim.

### d.   **Asthma Problems**

Plaintiff claims to suffer from "chronic respiratory conditions accompanied by labored breathing." (Am. Compl. at 18.) He claims that his request for an inhaler was denied by Defendant Dr. Maserati during his "six month check up clinic visit." (Id.) Plaintiff alleges that he suffered from "bouts of asthmatic problems, cardiovascular problems, headaches, and sneezing." (Id. at 20.)

In Plaintiff's previous action, Case No. 03-1556 SBA (PR), the Court dismissed his claims relating to denial of his request for an inhaler at the Santa Clara County Jail:

> Plaintiff does not state a cognizable claim for relief regarding the denial of an inhaler. The documents submitted by Plaintiff indicate that Dr. Lukrich had legitimate medical and penological reasons for denying the inhaler. Even if the lack of an inhaler contributed to Plaintiff's collapse on June 21, 2002, as Plaintiff alleges, that unfortunate outcome does not demonstrate that Dr. Lukrich lacked legitimate reasons to deny the inhaler, much less that he acted recklessly or with deliberate indifference in doing so. Therefore, Plaintiff fails to state a cognizable due process claim against Dr. Lukrich based on the denial of an inhaler.

(July 3, 2003 Order in Case No. 03-1556 SBA (PR) at 23-24.)

Similarly, here, Plaintiff does not demonstrate that Defendant Maserati lacked legitimate reasons to deny the inhaler, much less that Defendant Maserati acted recklessly or with deliberate indifference in doing so. Accordingly, Plaintiff's claims related to the denial of an inhaler are DISMISSED for failure to state a claim.

### e.   **Cardiovascular Care**

Plaintiff claims to suffers from "high blood pressure and cardiovascular problems . . . [with] severe chest pain." (Am. Compl. at 20-21.) He claims that he "has been prescribed Nitro for the chest pains." (<u>Id.</u> at 21.) Prior to his arrival at the San Mateo County Jail, he claims that he "has been able (both in and out of custody) to keep a full bottle of Nitro with him at all times." (<u>Id.</u>) He alleges that "[b]ased on a San Mateo County Correctional Health Services Policy, which favors the budget of San Mateo County, inmates are only allowed 3 Nitro pills at any given time." (<u>Id.</u>) As a result, he "has had to suffer severe chest pain at night when he was locked in -- when no Deputy was available based on the failure to supply an adequate amount of Nitro." (<u>Id.</u>) He further claims that "the San Mateo County policy to only allow 3 Nitro pills has been the motivating factor of his additional injury to his cadiovascular systems, further taxing a faulty heart valve, subject[ed] Plaintiff to emotional distress about his heart problems, causing depression that Plaintiff has had to forgo with out [sic] adequate mental health treatment." (<u>Id.</u> at 21-22.) Plaintiff alleges that Defendant Potts was informed about his "nitro problem in a[n] inmate grievance;" however, she "sounded deliberate indifference by personally endorsing the policy to provide only 3 Nitro to Plaintiff at a time." (<u>Id.</u> at 22.)

Neither the policy nor Defendant Potts's decision to endorse the policy is facially unreasonable. Such a policy restricting the amount of Nitro could also be for the obvious penological purpose of preventing substance abuse. While applying such a policy might amount to unconstitutional punishment in some situations, Plaintiff has not alleged facts demonstrating that the policy was unconstitutional as applied to him. Plaintiff claims to have experienced purely subjective reports of "severe chest pain at night," uncorroborated by independent medical evidence. Therefore, the Court concludes that Plaintiff has not stated a cognizable claim regarding the alleged denial of the proper amount of medication for his cardiovascular problems. Accordingly, this claim is DISMISSED.

### f.      Lack of Treatment for Drug Withdrawal

Plaintiff alleges that from December 1, 2005 to December 5, 2005, Plaintiff was "left to withdraw from a prescription medication that had severe side effects on his other medical problems (blood pressure, heart problems, glaucoma) without any medical treatment as requested." (<u>Id.</u> at 23.)

He claims to have suffered from "chills, headaches, chest pain, dizzyness [sic], while going through emotional distress from embarrassment [sic] of not being able to control his bowels in the cell with a cell partner or in the dayroom with other inmates." (Id.) He claims that Defendant Potts was informed about his problem and that he did not receive the "assistance" he requested. (Id. at 24.) He also claims that Defendant Maserati saw Plaintiff but even after being informed of the "problems Plaintiff suffered while detoxing," Defendant Maserati did not offer him any treatment. (Id.) Instead, he claims Defendant Maserati said, "Well, its [sic] out of your system by now." (Id.)

The Court finds that Plaintiff does not allege that Defendants Potts and Maserati acted with greater culpability than negligence, nor does he allege that the lack of treatment for his withdrawal caused him further significant injury or "unnecessary and wanton infliction of pain." McGuckin, 974 F.2d at 1059 (citing Estelle, 429 U.S. at 104).

The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a "serious" need for medical treatment. Id. at 1059-60 (citing Wood v. Housewright, 900 F.2d 1332, 1337-41 (9th Cir. 1990)).

Here, the symptoms Plaintiff claims he suffered do not show that he had a "serious" need for medical treatment. See id. Therefore, Plaintiff fails to state a cognizable claim for relief based on the failure to provide treatment for his withdrawal from his prescription medication. Accordingly, this claim is DISMISSED.

Plaintiff further alleges that he was denied treatment during his withdrawal, due to the San Mateo County's failure to "properly train and supervise its doctors nurses and other medical staff . . . ." (Am. Compl. at 24.) A local government may be liable for constitutional violations resulting from its failure to supervise, monitor or train, but only where the inadequacy of said supervision, monitoring or training amounts to deliberate indifference to the rights of the people with whom the local government comes into contact. See City of Canton v. Harris, 489 U.S. 378, 388 (1989). Only where a failure to supervise and train reflects a "'deliberate' or 'conscious' choice" by a local government can the local government be liable under § 1983. Id. at 389. The appropriate

United States District Court
For the Northern District of California

1  inquiry is therefore whether the injury would have been avoided "had the employee been trained

2  under a program that was not deficient in the identified respect." Id.  But-for causation is not

3  enough; "[r]ather, the policy must be the proximate cause of the section 1983 injury." Van Ort v.

4  Estate of Stanewich, 92 F.3d 831, 837 (9th Cir. 1996).  Plaintiff has not alleged sufficient facts to

5  establish the existence of a policy or to establish causation.  Therefore, this claim is DISMISSED for

6  failure to state a claim.

7                              **2.    RLUIPA Claim**

8       Plaintiff is Jewish.  He claims that from March 14, 2005 to December 30, 2005, he has "been

9  denied his exercise of his religion as provided for in the Religious Land Use and Institutionalized

10  Persons Act, 42 U.S.C. § 2000cc-1 (2000) (RLUIPA).  (Am. Compl. at 25.)  He claims that

11  Defendant Sheriff Greg Trindle violated his rights under RLUIPA by:  (1) forcing him to meet with

12  a Jewish Chaplin through glass; (2) failing to offer Jewish services; (3) not allowing Plaintiff to

13  "pray outside his cell away from the toilet;" and (4) not permitting Plaintiff to wear a yarmulke.  (Id.

14  at 25-26.)

15      RLUIPA provides: "No government shall impose a substantial burden on the religious

16  exercise of a person residing in or confined to an institution, as defined in section 1997 [which

17  includes state prisons, state psychiatric hospitals, and local jails], even if the burden results from a

18  rule of general applicability, unless the government demonstrates that imposition of the burden on

19  that person (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive

20  means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a).  The statute

21  applies to any "program or activity that receives Federal financial assistance." 42 U.S.C. § 2000cc-

22  1(b)(1).

23      Based upon Plaintiff's allegations, with the exception of the allegation that he was forced to

24  meet with a Jewish Chaplin through glass, the Court is unable to say at this time that he can prove no

25  set of facts which would entitle him to relief under RLUIPA.  Accordingly, the Court finds that he

26  has stated a claim for relief under the Act.  Here, however, Plaintiff merely names Defendant Trindle

27  as the individual responsible but he does not link Defendant Trindle to his claim by explaining what

28  that Defendant did that caused a violation of Plaintiff's constitutional rights.  Leer v. Murphy, 844

**United States District Court**
For the Northern District of California

F.2d 628, 634 (9th Cir. 1988) (liability may be imposed on an individual defendant under section

1983 if the plaintiff can show that the defendant proximately caused the deprivation of a federally

protected right).  Plaintiff has also given a general time frame of when the violations took place --

March 14, 2005 to December 30, 2005 -- but he does not allege specific dates.  Moreover, Plaintiff

has not alleged that he has exhausted his administrative remedies as to this claim as set forth below.

Accordingly, Plaintiff's RLUIPA claim is DISMISSED with leave to amend.

### 3.   **Retaliation Claim**

Plaintiff alleges that Defendants retaliated against him for "his prior litigation against San

Mateo County Officials," including Case No. C 00-0598 SBA (PR) and another case filed with the

Ninth Circuit Court of Appeals.  (Am. Compl. at 27.)  According to the amended complaint, after

Plaintiff filed those prior actions, he claims that the employees at the San Mateo County Jail,

specifically Defendant Potts, reacted in the following ways:

> (1)  failed to answer Plaintiff's medical requests;
> (2)  allowed Plaintiff to withdraw from prescription medications without medical assistance;
> (3) allowed a retaliatory cell search on August 17, 2005 by Deputy Golart.

(Id. at 28-29.)  Even after experiencing the alleged retaliatory actions, the record shows that Plaintiff

continued to pursue his other civil rights actions throughout his incarceration at the San Mateo

County Jail, including his prior action, Case No. C 03-1556 SBA (PR).  Liberally construed,

Plaintiff alleges that a retaliatory motive can be inferred against Defendants because after he filed

his previous actions against San Mateo County, he was, among other alleged retaliatory actions,

denied timely and adequate medical treatment and subjected to a retaliatory cell search.  (Id.)

"Within the prison context, a viable claim of First Amendment retaliation entails five basic

elements:  (1) an assertion that a state actor took some adverse action against an inmate (2) because

of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his

First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional

goal."  Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted).  To prove

retaliation, a plaintiff must show that the defendants took adverse action against him or her that

"would have chilled or silenced a person of ordinary firmness from future First Amendment

activities."  White v. Lee, 227 F.3d 1214, 1228 (9th Cir. 2000) (citing Mendocino Envtl. Ctr. v.

United States District Court
For the Northern District of California

Mendocino County, 192 F.3d 1283, 1300 (9th Cir. 1999)).  Retaliation is not established simply by showing adverse activity by defendant after protected speech; rather, plaintiff must show a nexus between the two.  See Huskey v. City of San Jose, 204 F.3d 893, 899 (9th Cir. 2000) (retaliation claim cannot rest on the logical fallacy of post hoc, ergo propter hoc, i.e., "after this, therefore because of this").  Compare id. (summary judgment proper against plaintiff who could only speculate that adverse employment decision was due to his negative comments about his supervisor six or seven months earlier) with Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1315-16 (9th Cir. 1989) (evidence of timing and nature of suspensions sufficient to infer retaliatory motive).

The prisoner must show that the type of activity he was engaged in was constitutionally protected, that the protected conduct was a substantial or motivating factor for the alleged retaliatory action, and that the retaliatory action advanced no legitimate penological interest.  Hines v. Gomez, 108 F.3d 265, 267-68 (9th Cir. 1997) (inferring retaliatory motive from circumstantial evidence).  Retaliatory motive may be shown by the timing of the allegedly-retaliatory act and inconsistency with previous actions, as well as direct evidence.  Bruce v. Ylst, 351 F.3d 1283, 1288-89 (9th Cir. 2003).  The filing of civil rights actions does constitute the exercise of constitutional rights.  However, the simple allegation that certain retaliatory actions occurred after Plaintiff's prior civil rights actions were filed does not, without more, establish retaliation; rather, Plaintiff must allege a nexus between the two.  See Huskey, 204 F.3d at 899.  Here, Plaintiff does not allege any nexus between the filing of his prior actions and the alleged retaliatory actions.  Plaintiff also has not alleged that he has exhausted his administrative remedies as to this claim as set forth below.  Accordingly, Plaintiff's retaliation claim is DISMISSED with leave to amend.  He may file an amended complaint to allege that the above-referenced actions were in retaliation for the exercise of his constitutional rights.

**III.    Exhaustion of Administrative Remedies**

The Prison Litigation Reform Act of 1995, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), amended 42 U.S.C. § 1997e to provide that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are

**United States District Court**
For the Northern District of California

1  exhausted." 42 U.S.C. § 1997e(a).  The exhaustion requirement is mandatory.  Wyatt v. Terhune,

2  315 F.3d 1108, 1117 n.9 (9th Cir.), cert. denied, 540 U.S. 810 (2003).  While nonexhaustion under

3  § 1997e(a) is an affirmative defense, a prisoner's concession to nonexhaustion is a valid ground for

4  dismissal, so long as no exception to exhaustion applies.  Id. at 119-20.  Accordingly, the court may

5  dismiss a claim without prejudice if it is clear from the record that the prisoner has conceded that he

6  did not exhaust administrative remedies.  See id.

7       The State of California provides its inmates and parolees the right to appeal administratively

8  "any departmental decision, action, condition or policy perceived by those individuals as adversely

9  affecting their welfare."  See Cal. Code Regs. tit. 15, § 3084.1(a).  It also provides its inmates the

10  right to file administrative appeals alleging misconduct by correctional officers.  See id. § 3084.1(e).

11  In order to exhaust available administrative remedies within this system, a prisoner must proceed

12  through several levels of appeal: (1) informal resolution, (2) formal written appeal on a CDC 602

13  inmate appeal form, (3) second level appeal to the institution head or designee, and (4) third level

14  appeal to the Director of the California Department of Corrections.  See id. § 3084.5; Barry v.

15  Ratelle, 985 F. Supp. 1235, 1237 (S.D. Cal. 1997).  This satisfies the administrative remedies

16  exhaustion requirement under § 1997e(a).  See id. at 1237-38.

17       Here, it appears from the face of the complaint that Plaintiff has not exhausted his

18  administrative remedies as to his RLUIPA and retaliation claims, the only remaining possibly

19  cognizable claims in this action.

20       Accordingly, the complaint is DISMISSED with leave to amend.  Within **thirty (30) days**

21  from the date of this Order Plaintiff shall inform the Court whether he exhausted his administrative

22  remedies with respect to his RLUIPA and retaliation claims **before** he filed his complaint.  If

23  Plaintiff fails to comply with this Order, the action will be dismissed without prejudice.

24  **IV.  Defendants**

25       In addition to the Defendants already mentioned in this Order, Plaintiff asserts claims against

26  several other individuals and public entities.

27       **A.   Claims Against Supervisors**

28  Plaintiff names several supervisors as Defendants without alleging that they directly

13

1   participated in a violation of his constitutional rights, or that they knew of but failed to stop or

2   prevent violations of his constitutional rights.  Under no circumstances, however, is there <u>respondeat</u>

3   <u>superior</u> liability under § 1983;  that is, there is no liability under § 1983 solely because one is

4   responsible for the actions or omissions of another.  <u>See</u> <u>Taylor v. List</u>, 880 F.2d 1040, 1045 (9th

5   Cir. 1989).  A supervisor generally "is only liable for constitutional violations of his subordinates if

6   the supervisor participated in or directed the violations, or knew of the violations and failed to act to

7   prevent them."  <u>Id.</u>  A supervisor may also be held liable if he or she implemented "a policy so

8   deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the

9   constitutional violation."  <u>Redman v. County of San Diego</u>, 942 F.2d 1435, 1446 (9th Cir. 1991) (en

10  banc).  Except as noted earlier in this Order, Plaintiff has not alleged direct participation in

11  constitutional violations by any of the supervisors named as Defendants.  Therefore, except as

12  provided above, Plaintiff's claims against the remaining supervisory Defendants are DISMISSED.

13          **B.      Claims Against San Mateo County**

14                  **1.      Municipal Liability**

15          Local governments are "persons" subject to liability under § 1983 where an official policy or

16  custom causes a constitutional tort.  <u>See</u> <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 690 (1978);

17  <u>see also</u> <u>Shaw v. Cal. Dep't of Alcoholic Beverage Control</u>, 788 F.2d 600, 604-05 & n.1, 610-11 (9th

18  Cir. 1986) (holding that county sheriffs department is a public entity under California law and may

19  therefore be sued in federal court, subject to the limitations on imposing liability on a municipality).

20  They may not be held vicariously liable for the unconstitutional acts of their employees under the

21  theory of <u>respondeat superior</u>.  <u>See</u> <u>Bd. of County Comm'rs v. Brown</u>, 520 U.S. 397, 403 (1997);

22  <u>Monell</u>, 436 U.S. at 691; <u>Fuller v. City of Oakland</u>, 47 F.3d 1522, 1534 (9th Cir. 1995).  Rather, to

23  impose municipal liability under § 1983 for a violation of constitutional rights, a plaintiff must

24  show: (1) that the plaintiff possessed a constitutional right of which he or she was deprived; (2) that

25  the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's

26  constitutional rights; and (4) that the policy is the moving force behind the constitutional violation.

27  <u>See</u> <u>Plumeau v. Sch. Dist. No. 40 County of Yamhill</u>, 130 F.3d 432, 438 (9th Cir. 1997).  Liability

28  based on a municipal policy may be satisfied one of three ways:

United States District Court
For the Northern District of California

(1) by alleging and showing that a city or county employee committed the alleged constitutional violation under a formal governmental policy or longstanding practice or custom that is the customary operating procedure of the local government entity,

(2) by establishing that the individual who committed the constitutional tort was an official with final policymaking authority and that the challenged action itself was an act of official governmental policy which was the result of a deliberate choice made from among various alternatives, or

(3) by proving that an official with final policymaking authority either delegated policymaking authority to a subordinate or ratified a subordinate's unconstitutional decision or action and the basis for it.

See Fuller, 47 F.3d at 1534; Gillette v. Delmore, 979 F.2d 1342, 1346-47 (9th Cir. 1992).

A local government may also be liable for constitutional violations resulting from its failure to supervise, monitor or train, but only where the inadequacy of said supervision, monitoring or training amounts to deliberate indifference to the rights of the people with whom the local government comes into contact.  See Harris, 489 U.S. at 388; Van Ort v. Estate of Stanewich, 92 F.3d 831, 835 (9th Cir. 1996); Mackinney v. Nielsen, 69 F.3d 1002, 1010 (9th Cir. 1995); Davis v. City of Ellensburg, 869 F.2d 1230, 1235 (9th Cir. 1989).

### 2.    **Alleged Unconstitutional Policies and Failure to Train**

Plaintiff challenges several San Mateo County policies and practices that allegedly resulted in retaliation and inadequate medical treatment for jail inmates.  Plaintiff, however, only has standing to challenge these policies if he personally was harmed by them.

Regarding Plaintiff's allegation relating to his eye care claim regarding a county policy of "providing sub-standard medical care to prisoners treated at the County Hospital," the Court has already found that Plaintiff has only made subjective reports of eye pain, uncorroborated by independent medical evidence.  This has already been discussed above, and the Court has found that he has not alleged facts demonstrating that the policy was unconstitutional as applied to him.  See Discussion Part II.B.1.a.  Similarly, regarding Plaintiff's cardiovascular care claim and the county's policy to only allow three Nitro pills, the Court has already found that Plaintiff claimed to have experienced purely subjective reports of "severe chest pain at night," uncorroborated by independent medical evidence.  As discussed above, the Court has found that Plaintiff has not alleged facts demonstrating that this policy was unconstitutional as applied to him.  See Discussion Part II.B.1.e. Finally, with respect to the Plaintiff's allegation of a denial of medical treatment during his

1   withdrawal from prescription medication relating to the county's failure to properly train and

2   supervise its doctors nurses and other medical staff.  Plaintiff's only allegation of personal injury is

3   that he suffered from certain symptoms, including chills, headaches, chest pain, and dizziness after

4   he was not provided medical treatment upon having to withdraw from taking prescription medicines.

5   That incident has also already been discussed above, and the Court has found that the symptoms he

6   suffered do no show that he had a "serious" need for medical treatment.  <u>See</u> Discussion Part

7   II.B.1.f.

8          Regarding the county's alleged policy of denying or delaying care due to budgetary concerns,

9   Plaintiff must allege with greater specificity when he was harmed by the denial or delay in medical

10  care and who made the decision to deny or delay care due to budgetary concerns.  In order to

11  establish municipal liability, Plaintiff must also allege that there was an identifiable, deliberate

12  policy or pervasive practice to deny or delay care due to budgetary concerns, rather than simply a

13  tendency or intermittent practice by certain county officials.  <u>See</u> <u>McDade v. West</u>, 223 F. 3d 1135,

14  1142 (9th Cir. 2000) (holding that proof of random acts or isolated incidents of unconstitutional

15  action by a non-policymaking employee are insufficient to establish the existence of a municipal

16  policy or custom); <u>Brass v. County of Los Angeles</u>, 328 F.3d 1192, 1199-1200 (9th Cir. 2003)

17  (defining policy as a deliberate choice to follow a course of action made by the official or officials

18  responsible for establishing final policy with respect to the subject matter in question).  Because

19  Plaintiff has not made sufficient allegations, his claim based on this alleged policy is DISMISSED.

20         Finally, Plaintiff makes conclusory allegations that the county has policy of "retaliating

21  against prisoners who file government claims, civil rights actions and complaints against any

22  municipal employee . . . ."  (Am. Compl. at 28.)  Such a claim is unsupported by sufficient facts to

23  show that the county either knew of such a policy or itself maintained a policy that amounted to a

24  violation of Plaintiff's constitutional rights.  <u>See</u> <u>Plumeau</u>, 130 F.3d at 438.  Proof of random acts or

25  isolated incidents of unconstitutional action by a non-policymaking employee are insufficient to

26  establish the existence of a municipal policy or custom. <u>See</u> <u>McDade v. West</u>, 223 F.3d 1135, 1142

27  (9th Cir. 2000).  Accordingly, this claim regarding an alleged retaliation policy is DISMISSED.

28         **C.**     **Claims Against Correctional Health Services**

1    Plaintiff names the Correctional Health Services (CHS), San Mateo County's professional

2    liability carrier, as a Defendant.  Plaintiff, however, does not have standing to sue CHS for a breach

3    of duty to the county.  Therefore, that allegation does not give rise to a cognizable claim for relief.

4    Ordinarily, a private individual does not act under color of state law, an essential element of

5    a § 1983 action.  See Gomez v. Toledo, 446 U.S. 635, 640 (1980).  There is no right to be free from

6    the infliction of constitutional deprivations by private individuals.  See Van Ort v. Estate of

7    Stanewich, 92 F.3d 831, 835 (9th Cir. 1996).  The Supreme Court, however, has treated a nominally

8    private entity as a state actor when it is controlled by a state agency; when it has been delegated a

9    public function by the state; or when it is entwined with government policies or government is

10   entwined in its management or control.  Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n,

11   531 U.S. 288, 296 (2001).  The Court also has found state action when a challenged activity results

12   from the State's exercise of coercive power; when the State provides significant encouragement for

13   the activity; or when a private actor operates as a willful participant in joint activity with the State.

14   See id.

15   Plaintiff alleges that the CHS acted in concert with state officials to violate his constitutional

16   rights.  If CHS made unilateral decisions to deny Plaintiff's claims regarding his health care and

17   those denials caused Plaintiff thereafter to receive constitutionally-inadequate care, Plaintiff could

18   assert a colorable § 1983 claim against the agency.  Plaintiff, however, has not so alleged.  He has

19   made only sweeping allegations that CHS acted wrongfully.  Therefore, Plaintiff fails to state a

20   cognizable claim for relief against CHS.  Accordingly, his claims against CHS are DISMISSED.

21   **V.    Pleading Requirements**

22   Because Plaintiff has not been following proper pleading requirements.  All future pleadings

23   submitted by Plaintiff to the Court shall comply with the following provisions of Rules 3-4(c)(2)-(3),

24   and 7-4(a)(2)-(5), (b), of the Northern District of California Civil Local Rules:

25   Rule 3-4.  Papers Presented for Filing.

26   (c)  General Requirements.

27   (2)  Written Text.  Text must appear on one side only and must be double-
     spaced with no more than 28 lines per page, except for the identification of counsel,
28   title of the case, footnotes and quotations.  Typewritten text may be no less than
     standard pica or 12-point type in the Courier font or equivalent, spaced 10 characters

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

per horizontal inch.  Printed text, produced on a word processor or other computer, may be proportionally spaced, provided the type may not be smaller than 12-point standard font (e.g., Times New Roman).  The text of footnotes and quotations must also conform to these font requirements.

(3)  Identification of Paper.  Except for exhibits, each paper filed with the Court must bear a footer on the lower margin of each page stating the title of the paper (e.g., "Complaint," "Defendant's Motion for Summary Judgment," etc.) or some clear and concise abbreviation.  Once the Court assigns a case number to the action that case number must be included in the footer.

Rule 7-4.  Brief or Memorandum of Points and Authorities.

(a)  Content.  In addition to complying with the applicable provisions of Civil L.R. 3-4, a brief or memorandum of points and authorities filed in support, opposition or reply to a motion must contain:

\*\*\*

(2)  If in excess of 10 pages, a table of contents and a table of authorities;

(3)  A statement of the issues to be decided;

(4)  A succinct statement of the relevant facts; and

(5)  Argument by the party, citing pertinent authorities.

(b)  Length.  Unless the Court expressly orders otherwise pursuant to a party's request made prior to the due date, briefs or memoranda filed with opposition papers may not exceed 25 pages of text and the reply brief or memorandum may not exceed 15 pages of text.

Civil L.R. 3-4(c)(2)-(3), 7-4(a)(2)-(5), (b).

Any pleadings which do not meet these requirements and for which prior permission to exceed the page limits has not been sought shall be returned to Plaintiff without being filed.

## CONCLUSION

For the foregoing reasons,

1.      Plaintiff's claims in the original complaint relating to the alleged denial of access to the law library at the San Mateo County Jail are DISMISSED for failure to state a claim.

2.      Plaintiff's claims regarding his eye care are DISMISSED for failure to state a claim.

3.      Plaintiff's claims regarding podiatry care are DISMISSED for failure to state a claim.

4.      Plaintiff's claims related to back pain are DISMISSED for failure to state a claim.

5.      Plaintiff's claims related to the denial of an inhaler are DISMISSED for failure to state a claim.

United States District Court
For the Northern District of California

1    6.      Plaintiff's claims related to the failure to provide treatment for his withdrawal from

2    his prescription medication are DISMISSED for failure to state a claim.

3    7.      Plaintiff's claims regarding the denial of the proper amount of medication for his

4    cardiovascular problems are DISMISSED for failure to state a claim.

5    8.      Plaintiff's remaining RLUIPA and retaliation claims are DISMISSED with leave to

6    amend.  Within **thirty (30) days** of the date of this Order Plaintiff may file amended RLUIPA and

7    retaliation claims to correct the noted pleading deficiencies with respect to these claims as set forth

8    above.  Plaintiff shall resubmit only his RLUIPA and retaliation claims and not his other claims,

9    which have been dismissed with prejudice.  In his amended complaint, Plaintiff must also link

10   specific Defendants to his claim by explaining what that Defendant did that caused a violation of

11   Plaintiff's constitutional rights.  Leer, 844 F.2d at 634.  If Plaintiff intends to sue a Defendant based

12   on supervisory liability, he must allege that the Defendant, as a supervisor, "participated in or

13   directed the violations, or knew of the violations and failed to act to prevent them."  Taylor, 880

14   F.2d at 1045.

15   9.      Plaintiff must clearly label the document an "Amended Complaint," and write in the

16   case number for this action, Case No. C 05-3209 SBA (PR).  The failure to do so within the

17   thirty-day deadline will result in the dismissal of Plaintiff's RLUIPA and retaliation claims and the

18   dismissal of this action without prejudice for failure to state a cognizable claim for relief and for

19   failure to exhaust available administrative remedies.

20   10.     Except as provided above regarding the supervisory Defendants in Plaintiff's

21   RLUIPA and retaliation claims, his claims against the remaining supervisory Defendants are

22   DISMISSED.

23   11.     All municipal liability claims against San Mateo County are DISMISSED.

24   12.     Plaintiff's claims against CHS are DISMISSED.

25   13.     Because the Court is dismissing the complaint with leave to amend, Plaintiff's motion

26   for a service order and motion for the case to be referred to Magistrate Judge Nandor Vadas for

27   settlement (docket nos. 30, 33) are DENIED as premature.

28   14.     This Order terminates Docket nos. 30 and 33.

1    IT IS SO ORDERED.

2    DATED: 7/29/08                          *Saundra B Armstrong*
                                             _____
3                                            SAUNDRA BROWN ARMSTRONG
                                             United States District Judge
4

5    UNITED STATES DISTRICT COURT
     FOR THE
6    NORTHERN DISTRICT OF CALIFORNIA

7    GOLDSTEIN,
                                                  Case Number: CV05-03209 SBA
8              Plaintiff,
                                             **CERTIFICATE OF SERVICE**
9       v.

10   COUNTY OF SAN MATEO et al,

11             Defendant.
     _____/
12

13   I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District
     Court, Northern District of California.
14
     That on July 30, 2008, I SERVED a true and correct copy(ies) of the attached, by placing said
15   copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said
     envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle
16   located in the Clerk's office.

17

18   Darryl Lee Goldstein
19   101 Hyde Street
     San Francisco, CA 94102
20
     Dated: July 30, 2008
21
                                             Richard W. Wieking, Clerk
22                                           By: LISA R CLARK, Deputy Clerk

23

24

25

26

27

28

United States District Court
For the Northern District of California